Merlis J. BROUSSARD and Ernest Johnson

v.

Challin Octave PEREZ et al.

Civ. A. No. 76–158.

United States District Court, E. D. Louisiana.

July 6, 1976.

Stanley A. Halpin, Jr., New Orleans, La., Joseph E. Defley, Jr., Port Sulphur, La., for plaintiffs.

Gerald W. Jones, John P. MacCoon, J. Stanley Pottinger, U. S. Dept. of Justice,

Washington, D. C., Gerald J. Gallinghouse, U. S. Atty., New Orleans, La., for the U. S., plaintiff-intervenor.

Sidney W. Provensal, Jr., Provensal & Fitzmaurice, New Orleans, La., for the Plaquemines Parish School Board and its individual members.

Luke A. Petrovich, Buras, La., for the Plaquemines Parish Commission Council and its individual members.

HEEBE, Chief Judge:

Plaintiffs bring this class action under 42 U.S.C. § 1983, § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, and the Fourteenth and Fifteenth Amendments to the Constitution. Jurisdiction is conferred on this Court by 28 U.S.C. § 1343(3). Plaintiffs and defendants have filed summary judgment motions on the issues concerning the Plaquemines Parish School Board.

*Plaquemines Parish School Board*

Plaintiffs allege that prior to June 11, 1970, the School Board was elected from ten single-member election districts. Subsequently, the membership was reduced to five seats elected at large. One member was required to reside in each of the five wards set up for the Parish Council. Since these changes were made after November 1, 1964, plaintiffs argue that they must be submitted to the United States Attorney General or the United States District Court for the District of Columbia for approval pursuant to 42 U.S.C. § 1973c. Defendants argue that submissions were made to the Attorney General and that he failed to object to them within sixty days, obviating any further need for them to submit the changes. Plaintiffs request an order requiring the defendants to submit the changes to the Attorney General or the United States District Court for the District of Columbia and enjoining any elections (now scheduled for August 14, 1976) until this is done.

*Plaquemines Parish Council*

■ Prior to 1961, Plaquemines Parish, like most Louisiana parishes, was governed by a police jury. In 1961 Plaquemines Parish switched from ten single-member districts to five at-large members, each of which had to be a resident of a different ward. Plaintiffs allege that this was done to dilute the strength of the increasing numbers of black voters. They also allege that no black has ever been elected to either the School Board or the Council. According to the 1970 census, the total population of Plaquemines Parish is 25,225, of which 5,778 are black. Plaintiffs ask for a judgment declaring that the method of electing Council members violates the Fourteenth and Fifteenth Amendments and for an order directing the Council to devise a single-member district election plan. Plaintiffs request that a three-judge court be convened pursuant to 42 U.S.C. § 1973c to hear their claims under the Voting Rights Act and pursuant to 28 U.S.C. § 2281 to hear their claims under § 1983, and the Fourteenth and Fifteenth Amendments. However, both parties have filed memoranda in opposition to the convening of a three-judge court on any basis whatsoever. Unfortunately, it is well settled that § 2281 is jurisdictional and may not be waived. *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 153, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *Borden Co. v. Liddy,* 309 F.2d 871 (8th Cir. 1962). We believe the similarity of purpose behind §§ 2281 and 1973c requires the same result under § 1973c, *infra.*

*Three-Judge Court—Constitutional Questions*

■ The fundamental policy behind § 2281 is to guard against "the improvident state-wide doom by a federal court of a state's legislative policy." *Phillips v. U. S.,* 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941). If plaintiffs are attacking a statute of statewide application embodying considered state policy, a three-judge court must be convened to hear their constitutional claims. *Board of Regents v. New Left Education Project,* 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972). However, statutes of only local concern or impact do not require the convening of a three-judge court. *Rorick v. Board of Commissioners,*

307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242 (1939). Moreover, § 2281 is not a statute of broad social policy but rather is technical and thus is to be narrowly construed. *Bailey v. Patterson,* 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).

■ Bearing these principles in mind, we turn to cases dealing with three-judge courts in the context of reapportionment. In *Moody v. Flowers,* 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967), the Supreme Court held that a three-judge court was not required where plaintiffs attacked a state statute that embodied the apportionment scheme for a single county, even though defendants argued that the statute being attacked was similar to state statutes covering other counties. In *Moody,* the Supreme Court also held that a three-judge court was not needed to hear an attack on the constitutionality of a county charter, even though it was argued that to declare the charter unconstitutional would require a declaration of unconstitutionality of two state laws. The Court said that the attack was only on the charter and not on any statewide law. The Court refused to look beyond the face of the complaint to determine whether a three-judge court was required. In the instant case plaintiffs challenge the parish charter adopted on May 12, 1961, which created the present system of at-large representation. However, plaintiffs do not challenge the constitutionality of the state statutes that allegedly authorized such actions. L.S.A.–R.S. §§ 33:1221 & 1271. Thus, on the face of the complaint, there is no challenge to a statute of statewide application; no danger that a single federal judge will paralyze at-large elections throughout Louisiana. Accordingly, we conclude that a three-judge court is unnecessary to consider plaintiffs' Fourteenth and Fifteenth Amendment challenges to the Parish Council election system. *Kendrick v. Walder,* 527 F.2d 44, 46 n. 3 (7th Cir. 1975).

*Three-Judge Court—Voting Rights Act*

■ Section 1973c of 42 U.S.C. provides for three-judge courts in accordance with 28 U.S.C. § 2284 to hear challenges to changes in voting practices occurring after November 1, 1964, if the state in which they occurred is covered by the Voting Rights Act. Louisiana and its political subdivisions are covered by the Voting Rights Act. *Beer v. United States,* 425 U.S. 130, 96 S.Ct. 1357, 47 L.Ed.2d 629, 44 U.S.L.W. 4435, 4436 n. 2 (1976). The School Board's change to an at-large system of voting is a change in voting procedures covered by the Voting Rights Act. *Allen v. State Board of Elections,* 393 U.S. 544, 569, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969), *Perkins v. Matthews,* 400 U.S. 379, 388–9, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971), and *Georgia v. United States,* 411 U.S. 526, 532–3, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973).

■ Defendants argue that they have complied with § 5 because the Attorney General did not reply to their letters of August 20, 1970, and September 29, 1970, within sixty days, thus failing to raise an objection to the changes in defendants' voting procedures. 42 U.S.C. § 1973c. However, defendants' final submission was not received by the Attorney General until October 5, 1970, the date on which the sixty-day reply period began to run. 28 C.F.R. § 51.18(a). The Attorney General's reply was mailed on December 2, 1970, well within the sixty-day reply period. 28 C.F.R. § 51.3(c).

■ Defendants also contend that even if the Attorney General replied within sixty days, he failed to "object" to their changes in voting procedures. The resolution adopting the at-large system of election cited § 17:71.1, *et seq.,* as empowering the Board to take such action. However, the Board's attorney's letter of August 20, 1970, indicated that the Board relied upon § 17:71.1, *et seq.,* as well as "prior existing state laws," which were unspecified. On June 26, 1969, the Attorney General interposed objections to § 17:71.1, *et seq.,* staying their legal effect. *East Carroll Parish v. Marshall,* 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296, 44 U.S.L.W. 4320 (1976). On April 14, 1972, the Attorney General with-

drew his objections to § 17:71.1, *et seq.,* on the basis of the Louisiana Attorney General's February 21, 1972 opinion that political subdivisions using § 17:71.1, *et seq.,* would submit their individual plans to the United States Attorney General under § 5. Therefore, since defendants had no authority under § 17:71.1, *et seq.,* to reapportion themselves because of the Attorney General's pre-existing objections, their submissions were premature and could not be considered by the Attorney General. 28 C.F.R. § 51.7. Accordingly, no effective submission was ever made so that the Attorney General did not fail to object to the changes in the School Board's election system.

The Board also argues that it had the authority to switch to at-large elections under § 17:52.

"There shall be elected by the qualified voters of each police parish jury ward of the several parishes of the state a member of the school board of such parish for each police juror in said ward." (As it read before a slight change in wording in 1975)

Since Plaquemines Parish had adopted a parish commission form of government with at-large elections, the Board argues that it had the power to switch to at-large elections to conform to § 17:52. We know of no case that supports this view. The language of § 17:52 does indicate that the method of election for police jurors and school board members should be the same, but it gives no guide as to who—the Louisiana legislature, police juries or school boards—has the power to ensure this. Also, the language of § 17:52 applies only to police juries which are elected from wards whereas defendants seek to apply it in the situation of a parish council elected at large. Moreover, if we adopt the Board's view, we must conclude that from 1961 when Plaquemines Parish switched to at-large Council elections until 1970 when the Board adopted the same system, the Board had the power to change its election system but refused to comply with Louisiana law. We are very reluctant to impute such illegality to the Board.

Finally, the detailed and explicit provisions § 17:71.1, *et seq.,* adopted in 1968 and amended on an emergency basis in 1970 when reapportionment of local governmental units was becoming a major legal issue (*See* Note, Constitutional Law—Reapportionment of Local Government Units, 29 La.L.Rev. 551 (1969)) indicates that the Louisiana legislature did not think that school boards had the power under § 17:52 to reapportion themselves. Moreover, the fact that the Louisiana legislature did not amend § 17:52 at the time § 17:71.1, *et seq.,* was adopted also indicates that it did not think § 17:52 gave school boards the power to reapportion themselves.

■ If § 17:52 had given school boards such power, then the detailed provisions of § 17:71.1, *et seq.,* would have been meaningless, since any school board could have relied upon § 17:52 to avoid them. Accordingly, we hold that § 17:52 did not give school boards the power to reapportion themselves so there was nothing for the Attorney General to object to under "prior existing state laws."

■ Since *Bailey v. Patterson,* 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), it has been clear that three-judge courts are not to be convened under § 2281, *et seq.,* if the constitutional issue presented is unsubstantial or frivolous. This conforms to the policy behind § 2281, *et seq.,* to prevent a single judge from writing his own views into vague areas of the Constitution, invalidating important statewide policies and thereby exacerbating federal/state friction. D. Currie, Three-Judge District Courts in Constitutional Litigation, 32 U.Chi.L.Rev. 1 (1964). Similar concerns animated Congress when it provided for three-judge courts in § 1973c. Congress was deeply concerned about the Voting Rights Act's constitutionality and its impact on federal/state relations. Given its serious intrusion into an area of traditional state control, three-judge courts with direct appeals to the Supreme Court were adopted to ameliorate the federal/state friction it caused. *South Carolina v. Katzenbach,* 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769

(1966); *Allen, supra,* 393 U.S. at 562–3, 89 S.Ct. 817. As we have indicated, this is also the policy basis for § 2281, *et seq.* Since the policy behind both provisions for three-judge courts is the same, and since in § 1973c Congress specifically stated that § 2284 was to govern the procedure for three-judge courts under the Voting Rights Act, *Allen, supra,* 393 U.S. at 560–61, 89 S.Ct. 817, we hold that precedents, including *Bailey,* under § 2281, *et seq.,* are also applicable to § 1973c.

██ As we have indicated above, defendants' arguments that they are not covered by § 5 of the Voting Rights Act are without merit. No adequate submission was ever made to the Attorney General of any of the changes. The Attorney General replied to defendants' purported submissions within the sixty-day reply period. In all important respects, this conclusion is controlled by Supreme Court precedent or cannot be seriously contested. Accordingly, defendants' arguments are unsubstantial within the meaning of *Bailey* so that a three-judge court need not be convened under 42 U.S.C. § 1973c. *See Dyer v. Love,* 307 F.Supp. 974, 981 (N.D.Miss.1969). Accordingly,

IT IS THE ORDER OF THE COURT that plaintiffs' request for a three-judge court, be, and the same is hereby, DENIED.

IT IS THE FURTHER ORDER OF THE COURT that defendants' motion for summary judgment, be, and the same is hereby, DENIED.

IT IS THE FURTHER ORDER OF THE COURT that plaintiffs' motion for summary judgment, be, and the same is hereby, GRANTED.

Plaintiff shall submit an appropriate order.