SAMUEL, Judge.
These four election contests were consolidated for trial in the lower court and for hearing in this court. Two of the suits were brought by John Jerry Blanchard, one against Robert C. Kent, Sr., and the other against Dallas Arnold Picou, Jr.[1] The other two suits were brought by William A. Roe and Vernon Dowdy against the same defendants. All suits seek to have Picou and Kent disqualified as candidates for election to the office of School Board, Ward 5, Plaquemines Parish in the primary election to be held September 16, 1978.
Following a trial on the merits, there were two judgments disqualifying both Pi-cou and Kent as candidates for the office of School Board, Ward 5, Plaquemines Parish, and further holding that Kent had properly qualified for the office of School Board, Ward 6, Plaquemines Parish. The two defendants, Picou and Kent, have appealed from these judgments.
Prior to June 11, 1970 the School Board of Plaquemines Parish consisted of ten members from single-member election districts. However, on that date the membership of the School Board was reapportioned from ten members to five members, each from one of five wards, but each of whom was to be elected parish wide. This reapportionment was attacked in a suit filed in the United States District Court for the Eastern District of Louisiana,[2] which resulted in a judgment enjoining the implementation of any method of electing school board *1330 members in the Parish of Plaquemines other than from the ten-ward system in effect prior to June 11, 1970. The injunction was based on Section 5 of the Voting Rights Act of 1965.[3]
Under the ten-ward system in effect pri- or to June 11, 1970, and under state law, parish school board members were elected on a ward basis[4] and any person who, at the time of qualifying as a candidate for the school board, had not been actually domiciled for the preceding year in the ward from which he sought election was ineligible for membership on the Board.[5] The ward numbers under the ten-ward system differ from those under the five-ward system. At the time their qualifying papers were filed with the Clerk of the District Court, both defendants were domiciled in Belle Chasse which is in Ward 6 of the ten-ward system and in Ward 5 of the five-ward system.
The judgments appealed from, insofar as they disqualify Picou and Kent as candidates for School Board members from Ward 5 under the ten-ward system, are based on the provisions of the above cited LSA-R.S. 17:52 I, requiring that a candidate for member of a parish school board be domiciled in the ward from which he seeks election.
During the qualifying period Picou filed his “Notice of Candidacy” (his qualifying papers) in which he certified “I will be a candidate in the primary election to be held on the 16th of September, 1978 for election to the office of School Board, Ward 5, Plaquemines Parish”. Kent also timely filed his “Notice of Candidacy” certifying “I will be a candidate in the primary election to be held on the 16th day of September, 1978 for election to the office of member of Plaquemines Parish School Board, Ward 5”. Later, but also timely, Kent filed another “Notice of Candidacy” stating he was a candidate in the primary election for office of member of Plaquemines Parish School Board, Ward 6. Kent attached a letter to his second qualifying papers stating he was not running for two offices at the same time and that he had only recently discovered he would be in violation of the federal injunction if he ran for the office of School Board, Ward 5.
Thus, plaintiffs argue that, if Kent’s first qualifying papers and Picou’s qualifying papers refer to “Ward 5” of the ten-ward system, then neither is qualified because neither is domiciled in “Ward 5” of the ten-ward system. They further argue that neither can be candidates for the School Board under the five-ward system because that system is not in effect as a result of the July 28, 1976 injunction of the United States District Court mentioned above.
In this court Kent simply points out in brief that, as stated in his letter attached to his second qualifying papers, he does not want to be in violation of the United States District Court injunction and feels he should run for the Ward 6 position. However, he does state that in the event Picou is allowed to run for the Ward 5 position, then he, Kent, wants to run for and oppose Picou for that position.
In this court Picou contends:
1. Appellant’s right to due process was violated by his disqualification;
2. The Clerk of Court and the Chairman of the Board of Election Commissioners were obligated to treat all candidates equally and to inform candidates of deficiencies in their Notices of Candidacy;
3. Appellant's Notice of Candidacy was not so defective as to disqualify him as a candidate.
We do not agree with any of these contentions.
Regarding the first, his attorney argues that Picou failed to properly qualify only because of lack of notice to him of the plan under which the election was to be conducted. We know of no statutory or other legal requirement that such notice be given. In addition, the evidence establishes to our satisfaction that Picou had full *1331 knowledge of the federal court injunction and its effect. He relies on the fact that the Clerk of the District Court with whom he filed his qualifying papers did not call his attention to the improper designation of the ward office for which he was a candidate. We know of no law, and Picou’s counsel points to none, which requires the Clerk of Court to take such action or authorizes him to do so; the Clerk’s only official function in this connection was to receive the qualifying papers from those who desired to become candidates for membership on the School Board.
In addition, Picou’s argument is that he did everything reasonable to insure his qualification was proper and in that connection wrote the Secretary of State seeking information. His letter and the answer of the Secretary of State are in the record and we have examined them. We find the only question asked in Picou’s letter was “Would a candidate run from the confined 5th Ward or is the practice of a Commission Council candidate representing a Ward but running parish-wide applicable in this situation?” The Secretary of State’s reply simply says “a candidate for the office of School Board member, Ward 5, would run ward wide not parish wide.” Thus, it appears to us that the answer of the Secretary of State affords Picou no relief in this case; the opposite appears to be true, i. e., there is nothing in the reply which would tend to mislead Picou.
As we have said relative to the Clerk of Court, in answer to the second contention, we know of no authority, statutory or otherwise, obligating the Clerk of Court or the Chairman of the Board of Election Commissioners to inform candidates of deficiencies in their qualifying papers. The record does reveal that the Chairman of the Board of Election Commissioners did give assistance to some of the candidates for School Board in the preparation of their qualifying papers. But we know of no law, and counsel points to none, which prohibits the Chairman or anyone else from assisting persons they desire to assist.
In connection with the third contention, Picou relies primarily on the case of Rousseau v. Democratic Parish Executive Committee.[6] We find that case distinguishable.
In Rousseau, candidates for several offices in St. Martin Parish, including the School Board, were disqualified by the Parish Executive Committee and by the District Court because their qualification papers did not specify the wards from which they intended to run. Each ward of the parish elected one school board member. The candidates’ qualification papers merely stated they were candidates for “parish school board.” In addition, the qualification papers contained declarations of the ward and precinct in which each candidate resided. The Court of Appeal held any ambiguity in the designation of the office for which the candidate sought to qualify was explained by the declaration of residence, since each potential candidate could only run from the ward of his residence. The court stated the declaration of residence was sufficient to give the committee all information necessary for it to certify the party as a candidate for office from that particular ward. Hence, the court reasoned the absence of a ward designation was not fatal because the required information could be obtained from the candidate’s statement of residence. In this case, Picou specifically designated the office for which he intended to run, and therefore Rousseau is not applicable.
These are actions objecting to the candidacy of Kent (under the first qualifying papers filed by him) and Picou pursuant to R.S. 18:491 and 492. They specifically qualified for the office of School Board, Ward 5, and do not meet the qualifications for that office. The judgment appealed from disqualified them as candidates for that specific office pursuant to R.S. 18:494 A. Our only alternatives are to affirm or reverse. If we were to reverse we would have to hold they have properly qualified for the Ward 5 position and there is no rational *1332 basis for reaching such a conclusion because they can legally qualify only for Ward 6 membership.
For the reasons assigned, the judgments appealed from are affirmed.

AFFIRMED.

. Honorable Allen L. Lobrano, Clerk of Court for the Parish of Plaquemines, State of Louisiana, and Honorable Paul J. Hardy, Secretary of State, State of Louisiana, were named as additional defendants in all four suits.

. Broussard v. Perez, 416 F.Supp. 584 (E.D. 1976), affirmed 572 F.2d 1113 (5th Circuit 1978).

. 42 U.S.C. 1973c.

. LSA-R.S. 17:52 A.

. LSA-R.S. 17:52 I.

. 164 So. 175 (La.App., 1st Circuit 1935).