Milburn James CROWE, Plaintiff,

v.

Earl S. LUCAS, Minnie Fisher, Joseph Woods, Robert Johnston, Victor McTeer, Brenda Wilson, Rebecca Shaw, Joe Feduccia, Harold Ward, Lawrence Thompson, Herman Johnson, Annyce Campbell and Felix Tate, Defendants.

No. DC 77–37–S.

United States District Court,
N. D. Mississippi,
Delta Division.

March 30, 1979.

Milburn J. Crowe, pro se, Leslie D. King, Greenville, Miss., for plaintiff.

Robert G. Johnston, Alexander & Johnston, Cleveland, Miss., P. Roger Googe, Jr., Asst. Atty. Gen., Jackson, Miss., for defendants.

MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This case is before the court for consideration of defendants' motion for summary judgment.

I.

Plaintiff began this action by filing a pro se complaint on April 27, 1977, naming as defendants the Mayor, City Clerk, Election Commissioners, Aldermen and Aldermen-elect, of the City of Mound Bayou, Mississippi, two practicing attorneys and the Judge of the Circuit Court of Bolivar County, Mississippi. The complaint contained allegations of fraud, mismanagement, and conspiracy to violate the rights of plaintiff arising out of the administration of the municipal government of Mound Bayou, its municipal court, and its municipal elections, as well as plaintiff's efforts to litigate his grievances in the state courts. Plaintiff also alleged that a new voter registration in

Mound Bayou had been conducted in a manner calculated to disenfranchise the political opposition and perpetuate the incumbents in office, with the specific result that plaintiff would be denied the right to vote in and, although fully qualified, would be denied a place on the ballot for alderman in the general election, which was scheduled for June 7, 1977. Plaintiff also filed a motion to proceed in forma pauperis and a motion requesting appointment of counsel, which were denied by the court on June 6, 1977.

After the court's denial of the motions for appointment of counsel and to proceed in forma pauperis, plaintiff, proceeding pro se, filed numerous motions, affidavits and other pleadings including renewed requests to proceed in forma pauperis and for appointment of counsel. Several motions were also filed by the defendants to which plaintiff filed pro se responses. After reviewing the pleadings, documents, affidavits and other papers filed by plaintiff, the court concluded that counsel should be appointed for plaintiff. An order was entered on July 25, 1977, appointing Honorable Leslie D. King to represent plaintiff.

On May 15, 1978, a hearing was held to consider the numerous motions pending before the court. An order was entered on that date disposing of all the motions and ordering the dismissal of the action unless plaintiff filed an amended complaint.

On July 18, 1978, plaintiff filed his amended complaint. The amended complaint invokes this court's jurisdiction under 28 U.S.C. § 1343 and alleges that the defendants[1] violated the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983 and § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c by prohibiting plaintiff from voting in and from running as a candidate in the June 7, 1977, municipal election for the City of Mound Bayou and by ordering a new registration of the voters of Mound Bayou without complying with the preclearance requirement of § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c.

On August 24, 1978, defendants filed the motion for summary judgment now before the court. That motion seeks dismissal of plaintiff's claim that the defendants have not complied with § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, but does not address plaintiff's allegations that defendants have violated the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983. On September 13, 1978, defendants filed an answer to the amended complaint denying the substantive allegations made by plaintiff and requesting dismissal of the complaint.

II.

During January or February, 1974, the Board of Aldermen for the City of Mound Bayou decided to purge the voter registration books in Mound Bayou. On February 5, 1974, the planned purge of the voter registration books was submitted to the Attorney General of the United States pursuant to § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c.[2] In a letter dated March 25, 1974, addressed to Mayor Lucas, the

1. Named as defendants are:
   Earl S. Lucas, Jr., Mayor of Mound Bayou
   Harold Ward, Lawrence Thompson, Herman Johnson, Annyce Campbell and Felix Tate, Members of the Board of Aldermen of Mound Bayou
   Joseph Woods, Brenda Wilson, Rebecca Shaw and Minnie Fisher, Members of the Election Commission of Mound Bayou
   Minnie Fisher, City Clerk and Registrar of Voters for Mound Bayou
   All defendants are sued in their individual and official capacities.

2. The submission to the United States Attorney General reads:

RE: REQUEST FOR ATTORNEY GENERAL APPROVAL PURSUANT TO SECTION 5 OF THE VOTING RIGHTS ACT OF 1965. The City of Mound Bayou, Mississippi, a municipal corporation duly organized and chartered pursuant to the laws of the State of Mississippi, and located in the Second Judicial District of Bolivar County, Mississippi, hereby request approval of the United States Attorney General, pursuant to the Voting Rights Act of 1965, that the proposition listed below does not constitute a violation of said Act.
PROPOSITION:
THAT THE VOTER REGISTRATION BOOKS FOR THE CITY OF MOUND BAYOU BE PURGED OF NAMES OF PERSONS WHO

Attorney General informed that he did "not interpose any objection to the change in question." [3]

· On January 7, 1975, the Board of Aldermen for the City of Mound Bayou passed a resolution which found that purging the voter registration books would not be sufficient and that a new registration of the voters was required to obtain accurate and legally sufficient voter registration books. The resolution directed the City Clerk to conduct a new registration of voters during the period January 7, 1975 to March 8, 1975, and prohibited anyone who had not registered on the new registration books, from voting in a municipal election.[4]

ARE DECEASED, HAVE MOVED BEYOND THE CORPORATE LIMITS OF SAID CITY, OR ARE NO LONGER ELIGIBLE TO VOTE IN MUNICIPAL ELECTIONS FOR WHATEVER REASON.

3. The March 25, 1974, letter reads:

Dear Mayor Lucas:

This is in reference to your submission to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, concerning a purge of the voter registration books in Mound Bayou, Mississippi. Your submission was received on February 19, 1974.

The Attorney General does not interpose any objection to the change in question. However, we feel a responsibility to point out that Section 5 of the Voting Rights Act expressly provides that the failure of the Attorney General to object does not bar any subsequent judicial action to enjoin the enforcement of such change.

4. The January 5, 1975, resolution reads in part:

WHEREAS, the Board of Aldermen of the City of Mound Bayou, Mississippi . . . find[s] . . . that the registration books of the municipality of Mound Bayou, are and have become, within the meaning of Section 23–5–51 of the Mississippi Code of 1972, Annotated, in such confusion that a new registration is necessary to determine directly the names of the qualified electors of said municipality, . . . [and] that a purging of said books will not be sufficient but that an entire new registration is the only way in which valid and proper elections . . . may be validly, properly and lawfully held . . . and the said Board of Aldermen of said Municipality having further specifically made a factual finding that the best interest of the municipality and the citizens thereof requires and necessitates, without question, a new registration pursuant to law.

NOW, THEREFORE, in consideration of the premises, the Board of Aldermen of the City of Mound Bayou do hereby resolve and order as follows:

1. Permission herefor having first been obtained from the Attorney General of the United States of America pursuant to Section 5 of the Voting Rights Act of 1965, by virtue of a letter dated March 25, 1974, the Clerk of this municipality, in her capacity as registrar of the voters hereof, shall forthwith, and according to law and under the terms hereof cause a new registration of eligible voters to be conducted in the City of Mound Bayou, Mississippi.

2. All persons eligible under Section 21–11–1 of the Mississippi Code of 1972, Annotated, and other applicable statutes, and laws, all as the same may have been amended, abridged or abrogated by applicable Court decisions, either State or Federal Statutes to vote in any municipal election held in this municipality after the date hereof and who desire to vote in said municipal elections, are hereby required to undergo and· submit to new registration.

3. This period of registration shall commence with the passing of this Resolution and said time for re-registration shall expire at midnight on Saturday, March 8, 1975, being 60 days after the passage of this Resolution.

.    .    .    .    .

6. That the Clerk of this municipality is hereby directed and ordered to immediately, forthwith and without delay to procure new registration books to conform with law and henceforth no person shall vote in a municipal election unless he is registered on the new registration books.

7. It is understood and agreed and goes without saying that any person otherwise eligible under the laws of the State of Mississippi as the same may have been amended by applicable Court decisions and Federal statutes, may register and be allowed to vote in this municipality after the expiration of the 60 day new registration period called for above. The 60 day period, for new registration, is delineated in this resolution as the period of time during which the municipal clerk shall make a concerted effort to locate and register all persons otherwise eligible to be registered and to vote in this municipality.

.    .    .

As paragraph 1 of the resolution indicates, the Board of Aldermen initially interpreted the March 25, 1974, letter from the Attorney General of the United States not only as a statement that he would not interpose an objection to the planned purge of the registration books, but also as an indication that the Attorney General would not interpose an objection to a new regulation of the voters in Mound Bayou.

On or about August 1, 1975, the new registration and the January 7, 1975, resolution ordering the new registration was submitted to the Attorney General of the United States pursuant to § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. (See Defendants' Motion for Summary Judgment and footnote 15, *infra*.) A letter dated October 2, 1975, from J. Stanley Pottinger, Assistant Attorney General, Civil Rights Division, informed Mayor Lucas that on August 4, 1975, the Attorney General received the material submitted by the City of Mound Bayou and that "[o]n the basis of our review and analysis of the above-mentioned resolution, the Attorney General does not interpose an objection to the change involved." [5]

Prior to January 7, 1974, plaintiff had been listed as a registered voter on the

Although defendants make this assertion in their answer (see ¶¶ 8 & 9 of Answer to Amended Complaint, filed Sept. 13, 1978), it is clear from a reading of the submission made to the Attorney General of the United States in August, 1975 (see footnote 15, *infra* ) that Mayor Lucas understood that the Attorney General did not intend to indicate in the March 25, 1974, letter whether he would or would not object to a new registration.

**5.** The October 2, 1975, letter reads:
Dear Mayor Lucas:
This is in reference to the re-registration of voters in the City of Mound Bayou, which was conducted pursuant to a January 7, 1975, resolution of the Board of Aldermen of Mound Bayou, and which was submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965. Your submission was received on August 4, 1975.
On the basis of our review and analysis of the above-mentioned resolution, the Attorney General does not interpose an objection to the change involved. However, we feel the responsibility to point out that Section 5 of the Voting Rights Act expressly provides that our failure to object does not bar any subsequent judicial action to enjoin the enforcement of the change should such action become necessary.

**6.** One requirement for qualifying as a candidate is that the candidate be a qualified elector of Mound Bayou. Plaintiff was not a qualified elector because he had not registered during the new registration; therefore, he was not a qualified candidate. (See, Answer 18, Response to Plaintiff's First Request for Admission, filed September 21, 1978.)

voting rolls of Mound Bayou. (See Answer 2, Response to Plaintiff's First Request for Admissions, filed September 21, 1978.) Plaintiff did not register as a voter for the City of Mound Bayou during the new registration of voters and was not allowed to vote in the municipal election held by Mound Bayou on June 7, 1977. (See Answer 8, 9, Response to Plaintiff's First Request for Admissions, filed September 21, 1978.) Plaintiff was also informed by the City that he could not run as a candidate for Alderman for Mound Bayou in the June 7, 1977, election, because he had not qualified as a candidate. [6]

## III.

Defendants contend that the preclearance requirement of § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c [7] (hereafter

Answer 18 admits that a copy of a letter dated May 6, 1977, from Honorable Charles Victor McTeer, counsel for the City of Mound Bayou is a true and correct copy. That letter reads:
Dear Mr. Crowe:
I do hereby notify you that you have not qualified as a candidate for the office of alderman in the June 7, 1977, municipal election. Our records indicate that as of April 28, 1977, you were not a registered voter of the City of Mound Bayou. As you know, April 28, 1977, was the closing date for qualification to run for municipal office in the June 7, 1977 election. Since you were not a registered voter of the City of Mound Bayou as of April 28, 1977 you had not as of said date qualified as an elector of the City of Mound Bayou and consequently cannot qualify as a candidate for any elective office in said City in the forthcoming June 7, 1977 election.

**7.** 42 U.S.C. § 1973c reads:
Whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the first sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964, or whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the second sentence of section 1973b(b) of this title are in effect shall

§ 5) has been satisfied because the January, 1975 resolution and the new registration of voters were submitted to the United States Attorney General and he informed the City that he did not intend to object to the registration. Defendants argue that since the preclearance requirement of § 5 has been satisfied, the part of plaintiff's amended complaint alleging violation of § 5 should be dismissed.

Plaintiff acknowledges that defendants submitted the new registration to the United States Attorney General and that he informed the city that he would not object to the new registration. Nonetheless, plaintiff argues that defendants still have not complied with the preclearance requirement of § 5 and that defendants illegally denied him of his right to participate in the 1977 election.

Plaintiff contends that a city which is subject to the Voting Rights Act of 1965, 42 U.S.C. §§ 1973, et seq. (hereafter "Act"), may not implement a change in a "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force

or effect on November 1, 1964," until that change is submitted pursuant to § 5 to the United States Attorney General for his approval. If the change is submitted for approval after implementation, then plaintiff contends that the preclearance requirement of § 5 is not satisfied and the change may not be enforced even if the United States Attorney General, knowing that the change has been implemented, indicates that he will not object to the change. In this case, plaintiff contends that the City of Mound Bayou is subject to the provisions of the Act, that the new registration of voters constitutes a change in a "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting" and that the new registration of voters is not effective because it was not submitted to the United States Attorney General *before* the new registration occurred. Since the new registration is not effective, plaintiff argues that the city illegally deprived him of the right to vote in and run as a candidate in the June, 1977, municipal election.

enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1968, or whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the third sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1972, such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure: Provided, That such qualification, prerequisite, standard, practice, or procedure may be enforced without such proceeding if the qualification,

prerequisite, standard, practice, or procedure has been submitted by the chief legal officer or other appropriate official of such State or subdivision to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission, or upon good cause shown, to facilitate an expedited approval within sixty days after such submission, the Attorney General has affirmatively indicated that such objection will not be made. Neither an affirmative indication by the Attorney General that no objection will be made, nor the Attorney General's failure to object, nor a declaratory judgment entered under this section shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure. In the event the Attorney General affirmatively indicates that no objection will be made within the sixty-day period following receipt of a submission, the Attorney General may reserve the right to reexamine the submission if additional information comes to his attention during the remainder of the sixty-day period which would otherwise require objection in accordance with this section. Any action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the Supreme Court.

## IV.

The first question for the court to resolve is whether a three-judge court must be convened to decide the motion for summary judgment.

In *Allen v. State Board of Electors*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) the Supreme Court held that a private litigant,[8] who alleges that a voting requirement is subject to the preclearance requirement of § 5, but has not been submitted to the appropriate federal authority[9] for approval, has the right under the Act to bring an action for declaratory and injunctive relief in a local district court. 393 U.S. at 554–60, 89 S.Ct. at 825–828, 22 L.Ed.2d at 10–14. Later in *Allen,* the court addressed the question of whether "§ 5 authorizes a three-judge court in suits brought by private litigants to enforce the approval requirements of [§ 5]." 393 U.S. at 561, 89 S.Ct. at 829, 22 L.Ed.2d at 14. After examining the Act and the reasons Congress requires three-judge courts to decide certain questions, the court concluded "that in light of the extraordinary nature of the Act in general, and the unique approval requirements of § 5, Congress intended that disputes involving the coverage of § 5 be determined by a district court of three judges." 393 U.S. at 563, 89 S.Ct. at 830, 22 L.Ed.2d at 16. *E.g. Dougherty County, Georgia, Board of Education v. White,* 439 U.S. 32, 99 S.Ct. 368, 58 L.Ed.2d 269 (1978) (three-judge court convened to decide whether the rule adopted by Board of Education is subject to § 5 and therefore must be submitted for federal approval); *Perkins v. Matthews,* 400 U.S. 379, 382 n. 3, 383, 91 S.Ct. 431, 433–434 n. 3, 27 L.Ed.2d 476, 481 n. 3, 482 (1971) (three-judge court convened to decide whether certain changes with respect to voting made by the City of Canton, Mississippi, were subject to the preclearance requirement of § 5); *Sumter County Democratic Executive Committee v. Dearman,* 514 F.2d 1168, 1170 (5th Cir. 1975) (Three-judge court must decide whether a change in voting procedure occurred and therefore is subject to § 5); *Matthews v. LeFlore County Board of Election Commissioners,* 450 F.Supp. 765, 767–68 (N.D.Miss.1978) (three-judge court convened to determine if legislative enactment is subject to § 5).

In *Broussard v. Perez,* 416 F.Supp. 584 (E.D.La.1976), *aff'd,* 572 F.2d 1113 (5th Cir. 1978), *cert. denied sub nom. Plaquemines Parish School Board v. Broussard,* 439 U.S. 1002, 99 S.Ct. 610, 58 L.Ed.2d 677 (1978), the plaintiffs claimed that a reapportionment of the Plaquemines Parish School Board had not been "submitted to the United States Attorney General or the United States District Court for the District of Columbia for approval pursuant to 42 U.S.C. § 1973c." 416 F.Supp. at 586.[10] Defendants contended alternatively that they were not covered by § 5 or if they were, that they had complied with § 5 by submit-

---

**8.** In *Allen,* the court found that an action under § 5 may be commenced in at least three ways: by a State which is subject to Act, by a private litigant, or by the United States Attorney General. 393 U.S. at 561, 89 S.Ct. at 829, 22 L.Ed.2d at 14. This case was brought by a private plaintiff.

For proceedings which are brought by a State or a subdivision of a State covered by the Act, *see, Briscoe v. Bell,* 432 U.S. 404, 97 S.Ct. 2428, 53 L.Ed.2d 439 (1977); *Beer v. United States,* 425 U.S. 130, 96 S.Ct. 1357, 47 L.Ed.2d 629 (1976); *South Carolina v. Katzenbach,* 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966). For proceedings instituted by the United States Attorney General, see, *United States v. Board of Commissioners of Sheffield, Alabama,* 435 U.S. 110, 98 S.Ct. 965, 55 L.Ed.2d 148 (1978); *Georgia v. United States,* 411 U.S. 526, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973).

**9.** Section 5 establishes alternative procedures for obtaining federal approval of a change in a voting requirement, practice or procedure. The change affecting voting may be submitted to either the United States District Court for the District of Columbia or to the Attorney General of the United States for approval pursuant to § 5. 393 U.S. at 548–49, 89 S.Ct. at 822, 823, 22 L.Ed.2d at 7–8.

**10.** The plaintiffs in Broussard also alleged a cause of action under 42 U.S.C. § 1983 and the Fourteenth and Fifteenth Amendments to the United States Constitution. Plaintiffs alleged that the method of electing members of the Plaquemines Parish Council violated these statutory and constitutional provisions. 416 F.Supp. at 586. This aspect of the opinion is not relevant to the motion for summary judgment before the court in the action sub judice.

ting the reapportionment to the United States Attorney General who had not objected within the 60-day period established in § 5. A single-judge district court considered these questions and held:

> [D]efendants' arguments that they are not covered by § 5 of the Voting Rights Act are without merit. No adequate submission was ever made to the Attorney General of any of the changes. The Attorney General replied to defendants' purported submissions within the sixty-day reply period. In all important respects, this conclusion is controlled by Supreme Court precedent or cannot be seriously contested. Accordingly, defendants' arguments are unsubstantial within the meaning of *Bailey [v. Patterson*, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962)] so that a three-judge court need not be convened under 42 U.S.C. § 1973c. *See Dyer v. Love*, 307 F.Supp. 974, 981 (N.D.Miss.1969).

416 F.Supp. at 589.

On appeal, the United States, appearing as amicus curiae argued "that a three-judge court was required pursuant to 42 U.S.C. § 1973c to determine the issues in this case." 572 F.2d at 1118 (footnote omitted). The Fifth Circuit rejected the argument.

> When Congress passed the Voting Rights Act of 1965, it provided for a three-judge court in 42 U.S.C. § 1973c because in cases involving a clash between state and federal authorities, hearing by a three-judge court with a direct appeal to the Supreme Court would hopefully lessen federal-state friction which was bound to arise due to this intrusion into a traditionally state-controlled province.
>
> In *Bailey v. Patterson*, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), recognizing this same policy governed Congress when it passed 28 U.S.C. § 2281 *et seq.* (provided for three-judge courts in certain instances), the Supreme Court held that if the constitutional issue presented is insubstantial or frivolous, it is not necessary to convene a three-judge court. Because the policy considerations are identical, we agree with the district

court's holding that the *Bailey* precedent can be applied to actions brought under § 5 of the Voting Rights Act which are insubstantial or frivolous.

> Defendants' contentions that they are not covered by § 5 of the Voting Rights Act, that they made an effective submission of an election plan to the Attorney General, and that the Attorney General did not object to this submission are without merit. As the district court stated, "In all important respects, this conclusion is controlled by Supreme Court precedent or cannot be seriously contested." *Broussard v. Perez*, 416 F.Supp. 584, 589 (E.D.La.1976). We, therefore, hold that defendants' arguments are insubstantial under *Bailey* and it was not necessary to convene a three-judge court under § 5 of the Voting Rights Act.

572 F.2d at 1118–19.

To decide defendants' motion for summary judgment, the court must answer the following questions:

1. Is the City of Mound Bayou covered by the Act?

2. Was the new registration of voters a change in a "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964" and therefore subject to the preclearance requirement of § 5?

3. Has the City of Mound Bayou satisfied the preclearance requirement of § 5 by submitting the new registration to the Attorney General of the United States for approval?

For the reasons which follow, the court finds that the answers to these questions are "controlled by Supreme Court precedent or cannot be seriously contested" and therefore are "insubstantial" and a three-judge court is not needed.

V.

A. *The City of Mound Bayou is Subject to the Act.*

■ The court finds that since the City of Mound Bayou is a subdivision of a cover-

ed state,[11] it too is covered by the Act. *Dougherty County, Georgia, Board of Education v. White,* 439 U.S. 32, 43–48, 99 S.Ct. 368, 375–377, 58 L.Ed.2d 269, 281–83 (1978); *United States v. Board of Commissioners of Sheffield, Alabama,* 435 U.S. 110, 117–136, 98 S.Ct. 965, 971–981, 55 L.Ed.2d 148, 157–69 (1978); *Perkins v. Matthews,* 400 U.S. 379, 381 n. 2, 91 S.Ct. 431, 433 n. 2, 27 L.Ed.2d 476, 481 n. 2 (1971).

B. *The New Registration is Subject to § 5.*

■ Section 5 requires that a state covered by the Act or a subdivision of a covered state, must obtain federal approval of a change in "any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964 . . . ." The terms "vote" and "voting" are defined in 42 U.S.C. § 1973*l* (c)(1) to "include all action necessary to make a vote effective in any primary, special, or general election, including but not limited to, *registration* . . . ."[12] (emphasis added). Since registration is specifically listed as one of the changes subject to § 5 and in light of the Supreme Court's conclusion that "Congress intended [for the Act] to reach any state enactment which altered the election law of a covered State in even a minor way." *Allen v. State Board of Elections,* 393 U.S. 544, 566, 89 S.Ct. 817, 832, 22 L.Ed.2d 1, 17 (1969), this court finds that the new registration of the voters of

Mound Bayou is subject to the preclearance requirement of § 5.

C. *Mound Bayou has Satisfied § 5's Preclearance Requirement.*

Section 5 provides that a change in voting qualification, prerequisite, standard, practice or procedure "may be enforced . . if the qualification, prerequisite standard, practice, or procedure has been submitted . . . to the Attorney General and . . the Attorney General has affirmatively indicated that [an] objection will not be made.

The allegations made by plaintiff in the amended complaint arise out of the June, 1977, municipal elections.[13] By that time, the City of Mound Bayou had sought approval of the new registration pursuant to § 5 and had received information from the U.S. Attorney General that he would not object to the registration.[14] Having complied with § 5, the City could enforce the prohibition against anyone voting in the municipal election who had not registered in the new registration book.

■ To the extent that plaintiff is arguing that the Act does not authorize the United States Attorney General to indicate that he would not object to the new registration because it was not submitted to him until after its implementation, the court finds that under *Morris v. Gressette,* 432 U.S. 491, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977) this court cannot review the decision by the U.S. Attorney General not to inter-

---

**11.** Mississippi is subject to the Act. *Allen v. State Board of Electors,* 393 U.S. 544, 548 n. 3, 89 S.Ct. 817, 822 n. 3, 22 L.Ed.2d 1, 7 n. 3 (1969).

**12.** 42 U.S.C. § 1973*l*(c)(1) reads:

The terms "vote" or "voting" shall include all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, listing pursuant to this subchapter, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election.

**13.** The plaintiff does not allege that during the period between January, 1975, when the new registration was ordered, and October, 1975, when the United States Attorney General informed the city he would not object to the new registration, that the defendants enforcement of the January, 1975, resolution and the new registration denied him the right to participate in a municipal election.

**14.** As noted in Part III, *supra,* the record shows that the new registration and January, 1975, resolution were submitted to the United States Attorney General in August, 1975, and that the letter informing the city that the United States Attorney General would not object to the new registration was dated October 2, 1975.

pose an objection to the new registration.[15] In *Morris,* the Court stated:

In light of the potential severity of the § 5 remedy, the statutory language, and the legislative history, we think it clear that Congress intended to provide covered jurisdictions with an expeditious alternative to declaratory judgment actions. The congressional intent is plain: the extraordinary remedy of postponing the implementation of validly enacted state legislation was to come to an end when the Attorney General failed to interpose a timely objection based on a complete submission. Although there was to be no bar to subsequent constitutional challenges to the implemented legislation, there also was to be "no dragging out" of the extraordinary federal remedy beyond the period specified in the statute. . . Since judicial review of the Attorney General's actions would unavoidably extend this period, it is necessarily precluded.

Our conclusions in this respect are reinforced by the fact that the Attorney General's failure to object is not conclusive with respect to the constitutionality of the submitted state legislation. The statute expressly provides that neither "an affirmative indication by the Attorney General that no objection will be made, nor the Attorney General's failure to object . . . shall bar a subsequent action to enjoin enforcement" of the newly enacted legislation or voting regulation.

432 U.S. at 504–05, 97 S.Ct. at 2420–21, 53 L.Ed.2d at 518–19 (footnotes omitted).

Thus, the court finds that at the time of the 1977 municipal elections, the new registration had been submitted to the United States Attorney General for approval pursuant to § 5 and that he had informed the City that he did not intend to object to the new registration. Having taken this action, the court finds that the City satisfied the preclearance requirement of § 5.

## VI.

Having satisfied the approval procedure of § 5, the court finds that the defendants have not violated § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c and therefore that part of plaintiff's amended complaint alleging violation of § 5 should be dismissed. The court's finding does not preclude plaintiff from proceeding with his allegation that the new registration violated 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution. *See Allen v. State Board of Electors,* 393 U.S. 544, 549–50, 89 S.Ct. 817, 823, 22 L.Ed.2d 1, 8 (1969).

An appropriate order will be entered.

---

**15.** The record clearly shows that the United States Attorney General was aware that new registration had occurred at the time it was submitted to him for approval pursuant to § 5. In a letter dated August 1, 1975, from Mayor Earl L. Lucas, defendant, to Honorable J. Stanley Pottinger, Mayor Lucas states:

If you will note, the re-registration procedures *took place* on the basis of a letter we received from your office dated March 24, [sic] 1974, . . . . . However, in a conversation with Mrs. Polly Dammann, it was pointed out that purging of the voter registration books did not include re-registration. Therefore, I should like to submit to your office a copy of our Resolution calling for a re-registration based on the Mississippi Code of 1972, Annotated. You will also note that

the resolution stipulated that no person would be permitted to vote in any municipal election unless he had registered on the new registration books, . . . . .

We should, therefore, like to request approval from your office for the re-registration *already held,* based on the content of the resolution calling for such. (emphasis added)

The letter dated October 2, 1975, informing Mayor Lucas that the United States Attorney General would not object to the new registration (see footnote 5, supra), states: "This is in reference to the re-registration of voters in the City of Mound Bayou, *which was conducted* pursuant to a January 7, 1975 resolution. . . . " (emphasis added)