Merlis J. BROUSSARD et al.,
Plaintiffs-Appellees,

v.

Chalin Octave PEREZ et al.,
Defendants-Appellants.

No. 76–3536.

United States Court of Appeals,
Fifth Circuit.

May 12, 1978.

Sidney W. Provensal, Jr., New Orleans, La., for Plaquemines School Bd. et al.

Joseph E. Defley, Jr., Port Sulphur, La., Stanley A. Halpin, Jr., New Orleans, La., for plaintiffs-appellees.

Walter W. Barnett, Miriam R. Eisenstein, U. S. Dept. of Justice, Washington, D.C., amicus curiae.

Before SKELTON*, Senior Judge, and FAY and RUBIN, Circuit Judges.

FAY, Circuit Judge:

This is a class action by black plaintiffs on their own behalf and on behalf of black voters in Plaquemines Parish, Louisiana, challenging the Plaquemines Parish School Board's change to at-large election of its members on June 11, 1970, as inoperative because the School Board failed to obtain clearance as required by § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c (1970).[1] On cross motions for summary judgment the single judge district court ruled the Plaquemines Parish School Board must comply with the requirement that

---

* Senior Judge of the United States Court of Claims, sitting by designation.

1. Voting Rights Act of 1965, Pub.L. 89–110, 79 Stat. 439 (codified at 42 U.S.C. § 1973c (1970))
   Alteration of voting qualifications and procedures; action by state or political subdivision for declaratory judgment of no denial or abridgement of voting rights; three-judge district court; appeal to Supreme Court
   Whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the first sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964, or whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the second sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1968, such State or subdivision may institute an action in the United States District Court for the District of Co-

lumbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure: Provided, That such qualification, prerequisite, standard, practice, or procedure may be enforced without such proceeding if the qualification, prerequisite, standard, practice, or procedure has been submitted by the chief legal officer or other appropriate official of such State or subdivision to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission, except that neither the Attorney General's failure to object nor a declaratory judgment entered under this section shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure. Any action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the Supreme Court.

they submit their election plan to the Attorney General of the United States. 42 U.S.C. § 1973c (1970).[2] Defendant-School Board appeals. We affirm.

Prior to 1960, Plaquemines Parish had a ten-member police jury and a ten-member school board, both of which were elected from ten single-member district or wards. In 1961, Plaquemines abandoned the police jury system and adopted a Parish Commission Council charter which provided for a five-member council to be elected at large. No change was made in the School Board's

composition or method of election at that time.

Louisiana law then required:

The membership of each parish school board shall be as follows:

There shall be elected by the qualified voters of each police [parish] jury ward of the several parishes of the state a member of the school board of such parish for each police juror in said ward.

La.Rev.Stat. § 17:52 (as it read before 1975).

In 1967, the Parish Council adopted Ordinance 81[3] pursuant to La.Rev.Stat.

---

**2.** Other issues presented by plaintiffs are awaiting resolution by the district court and are not before this Court in this case.

**3.**         ORDINANCE NO. 81

To amend Ordinance No. 78, redistricting the Parish of Plaquemines into five (5) Wards for the convenience of the people of the Parish and in the interest of more economical administration of the public affairs of this Parish, by clarifying descriptions of the boundaries of said wards, and to repeal any and all ordinances or resolutions in conflict herewith.

WHEREAS, under Section 4 of the Charter for Local Self-Government for Plaquemines Parish, Louisiana, the Plaquemines Parish Commission Council succeeded to all the jurisdiction and powers of the Plaquemines Parish Police Jury as governing authority of the Parish of Plaquemines and R.S. 33:1224 provides that the Police Jury of each parish may redistrict their parish into not less than five (5) nor more than twelve (12) police jury wards, as the convenience of the people may require, and shall designate said wards numerically and in consecutive order, and it is to the best interest and convenience of the people of this Parish to redistrict the Parish of Plaquemines into five (5) Wards so as to avoid unnecessary multiple Ward elections and because the subdivision of the Parish into five wards, instead of 10 as presently exists, will make for more economical administration of Parish affairs,

THEREFORE:

BE IT ORDAINED by the Plaquemines Parish Commission Council:

SECTION 1.

The Parish of Plaquemines shall be, and is hereby redistricted into five (5) Wards as hereinafter provided.

SECTION 2.

Ward 1 shall include all of the area in the Parish of Plaquemines on the east side of the Mississippi River from the upper boundary of this Parish to the lower line of Phoenix Plantation, or the upper line of Harlem Plantation at the Mississippi River, and extending in a north-

easterly direction along the dividing line of said plantations to the 40 arpent line and thence continuing in the same direction to the Plaquemines—St. Bernard Parish Boundary Line.

Ward 1 shall have 2 precincts. Precinct 1 to be located at Braithwaite; Precinct 2 to be located at Woodlawn.

SECTION 3.

Ward 2 shall include all of the area in the Parish of Plaquemines on the east side of the Mississippi River from the lower boundary line of Ward 1 as above established and extending down the Mississippi River to the Head of Passes; then extending southerly along the west bank of Southwest Pass to the end thereof; then due south to the parish boundary. Ward 2 shall have four (4) precincts. Precinct 1 to be located at Pointe a la Hache; Precinct 2 to be located at Ostrica; Precinct 3 to be located at Olga; and Precinct 4 to be located at Pilottown.

SECTION 4.

Ward 3 shall include all of the area in the Parish of Plaquemines west of the West bank of Southwest Pass and west of the West bank of the Mississippi River extending northerly from the lower boundary of Ward 2, to the upper boundary of Sunrise Subdivision at the Mississippi River and thence westerly along a line extending along the upper boundary of Sunrise Subdivision and an extension thereof to the Range line between Rangos 28 E and 29 E, to the shore line; thence southwest to the Parish Boundary.

Ward 3 shall have three (3) precincts. Precinct 1 to be located at Venice; Precinct 2 to be located at Boothville; and Precinct 3 to be located at Buras.

SECTION 5.

Ward 4 shall include all of the area in the Parish of Plaquemines west of the Mississippi River extending northerly from the upper boundary of Ward 3 to the upper line of Woodland Plantation at the Mississippi River, and thence southwesterly along the upper line of Woodland Plantation to the 40 arpent line,

§ 33:1224 (as it read before 1968)[4] which provided for apportioning the parish into five single-member election wards so that there would be five school board members. It is the School Board's contention that once there were five wards then La.Rev.Stat. § 17:52 came into operation and one School Board member would be elected from each ward. Ordinance 81 also provided that no elections would be held until, due to attrition by death or term expirations, one or more of the newly created wards had no representative on the school board. This provision resulted in no school board elections between 1967 and 1970.

In June 1970, when elections were needed to fill three openings on the school board, the school board adopted a resolution which retained the five-member board and the wards created by Ordinance 81. However, the Resolution provided elections would be "at-large" with one member residing in each of the five wards. One specific part of the Resolution provided:

WHEREAS, State Reapportionment Laws provide that the School Board may create such special School Board Election Districts as it deems desirable and that all or part of its members may be elected from such Districts, and one or more of

thence continuing in the same direction to the Plaquemines Parish Boundary Line.

Ward 4 shall have two (2) precincts. Precinct 1 to be located at Empire; and Precinct 2 to be located at Port Sulphur.

SECTION 6.

Ward 5 shall include all of the area in the Parish of Plaquemines west of the Mississippi River from the upper or northern boundary of Ward 4 as above established to the upper or northern boundary of the Parish of Plaquemines.

Ward 5 shall have three (3) precincts. Precinct 1 to be located at Lake Hermitage; Precinct 2 to be located at Ollie; and Precinct 3 to be located at Belle Chasse.

SECTION 7.

The Registrar of Voters of the Parish of Plaquemines is directed to change the designation of Wards and Precincts of all registered voters in the Parish of Plaquemines, to conform to the redistricted Wards and Precincts as herein established so as not to inconvenience the electors of the Parish and to avoid confusion in voting at the next and succeeding elections in the Parish of Plaquemines.

SECTION 8.

That the redistricting of Wards as herein established shall not affect or interfere with Parish property assessments for the year 1967, and that all 1967 tax assessments in the Parish of Plaquemines shall be based on the existing ten (10) wards.

SECTION 9.

Redistricting of wards as herein established shall not effect or interfere with the conduct of the primary election on November 4, 1967 or the April, 1968 general election in the existing ten (10) wards of the Parish of Plaquemines. *None of the terms of office of any Ward officer of the Parish of Plaquemines to which he has been elected or nominated shall be affected by the redistricting of the Parish of Plaquemines into the above wards, and all said ward officers may serve out their terms of office, but no vacancies in any of said ward offices conflict-*

*ing with the wards as above established shall be filled,* so that there may be an orderly transition of said ward offices in conformity with the redistricting of the wards in the Parish of Plaquemines as above established.

SECTION 10.

If any section or part of section of this Ordinance is declared invalid by any court of last resort, such invalidity shall not affect any of the remaining sections of this ordinance.

SECTION 11.

All ordinances and resolutions or portions thereof previously adopted by the Plaquemines Parish Police Jury or this Council which may be in conflict herewith are hereby repealed. I hereby certify the above and foregoing to be a true and correct copy of an Ordinance adopted by the Plaquemines Parish Commission Council at a meeting held at its office in the Courthouse, Pointe a la Hache, Louisiana, on October 14, 1957.

4. La.Rev.Stat. § 33:1224

Police jury may redistrict parish into wards; appointment of temporary officers

The police jury of each parish may redistrict their parish into not less than five nor more than twelve police jury wards, as the convenience of the people may require, and shall at the same time district these police jury wards into one or more justice of the peace and election wards, as they think proper, and shall designate said wards numerically and in consecutive order. No police jury shall redistrict their parish as herein provided except by a two-thirds vote of the police jury, recorded by yeas and nays. Whenever any police jury redistricts their parish and creates more than the number of wards such parish presently contains, the police jurors, justices of the peace and constables of the additionally created wards shall be appointed therefor by the governor, by and with the advice and consent of the senate, to serve until the next general state election.

its members may be elected at large from each such Districts . . . .

Appendix p. 19. This paragraph essentially tracks the provisions of 1968 La. Acts No. 561, § 1, La.Rev.Stat. § 17:71.1 through 17:71.6.[5] On June 29, 1969, the Attorney General of the United States had interposed an objection to No. 561 under the authority granted him by § 5 of the Voting Rights Act of 1965.

By letter dated August 20, 1970, the School Board notified the Attorney General of its Resolution of June, 1970. Additional information was mailed to the Attorney General by letter dated September 29, 1970, and contained a five page memorandum purporting to demonstrate the validity of the election change and the election held pursuant to that change in August, 1970. On December 2, 1970, the Attorney General, through an assistant, responded, explaining that due to "his earlier objection to the enabling legislation and federal court decisions affecting at-large election problems, we doubt that the Attorney General of the United States has authority to object or indicate that he has no objection to such a change in Plaquemines Parish." (Appendix p. 23).

On April 14, 1972, the objection to No. 561 was withdrawn on the express condition that the State Attorney General would notify all parishes that they must independently submit any proposed implementation of the statute. It came to the attention of the Department of Justice in August, 1975, that Plaquemines Parish had been following its 1970 Resolution all along. The Assistant Attorney General wrote advising the School Board:

If the School Board desires to legally implement the changes [made by the 1970 Resolution] . . . , it is necessary . .

that they be submitted to either the Attorney General of the United States or the United States District Court for the District of Columbia for review pursuant to section 5 of the Voting Rights Act of 1965, 42 U.S.C. 1973c.

Appendix p. 25. Counsel for the School Board replied, by letter dated September 5, 1975, that the 1970 Resolution had merely reduced the number of members on the School Board from ten to five, pursuant to La.Rev.Stat. § 17:52, and this change had been submitted to the Attorney General on August 20 and September 29, 1970, but no objection had been interposed by the Attorney General within sixty days. This prompted suit by private plaintiffs in January, 1975.

■ Section 5 of the Voting Rights Act of 1965 requires that the Attorney General object to a plan within sixty days after it is submitted. The School Board's contention that its plan, mailed September 29, 1970, must be presumed to have been received by the United States Department of Justice by October 2, 1970 is without merit. The result, if this contention were meritorious, would be that the Attorney General's response of December 2, 1970, was given more than sixty days after the plan's submission, and therefore, the submission must be deemed approved under § 5. The School Board contends that because its plan was mailed on September 29, 1970, it must be presumed to have been received by the Department of Justice on or before October, 2, 1970, and that the Attorney General's December 2, 1970, response was mailed beyond the sixty day limit. Therefore, it concludes, the plan must be deemed approved under § 5 of the Voting Rights Act. Both defendants' contention and its conclusion are faulty. The September 29 letter sent by defendants was offered into evidence by

**5.** La.Rev.Stat. § 17:71.3B

B. Each of said boards, after determining the number of members of said board after reapportionment is to be effective, may create such special school board election districts as it deems desirable, which districts need not be coterminous with, nor have any relation to, the wards or precincts that may be created by the police jury or cities or

towns within and for said parish or city, but any such special school board election districts created as a result of this Subpart must be compact and contiguous. The board may provide that all or part of its members shall be elected from such districts and may provide that one or more of its members may be elected at large from each of such districts.

plaintiffs and upon it the Department of Justice time stamp clearly showed receipt on October 5, 1970. The speed of the United States Postal Service is not an irrebuttable presumption. The documentary evidence is undisputed and, therefore, rebuts any inference of a more speedy delivery. The district court properly found the Attorney General's reply was mailed within the mandatory sixty-day reply period.

The district court further found the defendants' 1970 submission was premature and could not be considered by the Attorney General because the Attorney General had interposed an objection to the statute, La.Rev.Stat. § 17:71.1 *et seq.*, under which reapportionment was authorized. The School Board argues that it had the authority to change to at-large elections of its members under La.Rev.Stat. § 17:71 *et seq.*

■ The facts of this case strongly indicate the School Board was changed to a five-member body in 1967 in order to comply with La.Rev.Stat. § 17:52 which required the School Board to have the same number of members as the Commission Council (as substituted for the police jury). The defendants suggestion that because the Commission Council is elected at-large, § 17:52 requires the School Board to be elected at-large is not persuasive. The statute is totally silent as to the manner of election. Its provisions deal with the number of members and not method of selection.

The School Board's argument also overlooks its clear reliance upon La.Rev.Stat. § 17:71 in passing the resolution of June, 1970.

■ The United States Supreme Court, in *East Carroll Parish School Board v. Marshall*, 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296 (1976), considered the Attorney General's objection to La.Rev.Stat. § 17:71 and stated:

> Moreover, since the Louisiana enabling legislation was opposed by the Attorney

General of the United States under § 5 of the Voting Rights Act, the [police] jury did not have the authority to reapportion itself.

424 U.S. at 639, note 6, 96 S.Ct. at 1085. The Supreme Court's conclusion that the police jury did not have the authority to reapportion itself pursuant to an opposed statute is equally controlling upon the School Board. The School Board changed to an at-large election under La.Rev.Stat. § 17:71 at a time when the Attorney General had interposed an objection. The reapportionment action by the School Board was, therefore, ineffective and the submission of such a plan to the Attorney General was properly found by the district court to be premature.

In its brief as amicus curiae, the United States argues that a three-judge court was required pursuant to 42 U.S.C. § 1973c to determine the issues in this case.[6] When Congress passed the Voting Rights Act of 1965, it provided for a three-judge court in 42 U.S.C. § 1973c because in cases involving a clash between state and federal authorities, hearing by a three-judge court with a direct appeal to the Supreme Court would hopefully lessen federal-state friction which was bound to arise due to this intrusion into a traditionally state-controlled province.

■ In *Bailey v. Patterson*, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), recognizing this same policy governed Congress when it passed 28 U.S.C. § 2281 *et seq.* (provided for three-judge courts in certain instances), the Supreme Court held that if the constitutional issue presented is insubstantial or frivolous, it is not necessary to convene a three-judge court. Because the policy considerations are identical, we agree with the district court's holding that the *Bailey* precedent can be applied to actions brought under § 5 of the Voting Rights Act which are insubstantial or frivolous.

■ Defendants' contentions that they are not covered by § 5 of the Voting Rights

---

**6.** Plaintiffs and defendants do not contend on this appeal that there was a necessity for the convening of a three-judge court.

Act, that they made an effective submission of an election plan to the Attorney General, and that the Attorney General did not object to this submission are without merit. As the district court stated, "In all important respects, this conclusion is controlled by Supreme Court precedent or cannot be seriously contested." *Broussard v. Perez*, 416 F.Supp. 584, 589 (E.D.La.1976). We, therefore, hold that defendants' arguments are insubstantial under *Bailey* and it was not necessary to convene a three-judge court under § 5 of the Voting Rights Act.

AFFIRMED.