Mary Ann WOODARD, et al.,
Plaintiffs,

v.

MAYOR AND CITY COUNCIL OF LUMBER CITY, GEORGIA, et al., Defendants.

Civ. A. No. CV387–027.

United States District Court,
S.D. Georgia,
Dublin Division.

Nov. 25, 1987.

Laughlin McDonald, Neil Bradley, American Civil Liberties Union Foundation, Atlanta, Ga., for plaintiffs.

Ken W. Smith, Hazlehurst, Will Ed Smith, Eastman, Ga., for defendants.

ORDER

BOWEN, District Judge.

Plaintiffs bring this action under 42 U.S.C. § 1973c, alleging that the defendants have violated the Voting Rights Act by failing to secure preclearance of a municipal voting regulation prior (or subsequent)

to its passage in 1973. Before the Court are plaintiffs' motion for summary judgment on the preclearance issue, their motion for a temporary restraining order preventing the defendants from conducting a scheduled election on December 1, 1987, and their motion for an injunction requiring defendants to name plaintiff Mary Ann Woodard to the City Council in accordance with her plurality-vote victory in the 1985 election.

## BACKGROUND

Lumber City is a municipality of some 1,500 souls in Telfair County, Georgia. In 1909, an electoral system was approved for Lumber City that operated on the principle of plurality vote. Under that law, candidates would run together in any given election in one "pool," with the top vote-getters taking whatever seats were available in that election. *See* Ga.Laws 1909, p. 1024.

Trouble developed in 1950. In that year, two candidates tied for the third and last city council spot, presenting the city fathers with an embarrassing dilemma. In order to prevent such problems from occurring the future, the local election rules were modified somewhat in 1952 to provide for a "posting" system for subsequent city council races. Thenceforth, candidates had to designate which city council seat they were contesting. Thus, for example, rather than conducting one race for three seats, Lumber City would hold three elections, one for each seat. The new plan did *not*, however, specify that the basic plurality vote rule was being abandoned.

In 1973, the 1909 election law was replaced by a new law adopting the principle of majority voting. *See* Ga.Laws 1973, p. 3540. This 1973 law required a run-off election to be held in the event that no candidate for the office of mayor or for one of the city council seats secured a majority of the popular vote. The triggering event for this litigation occurred in 1985, when plaintiff Mary Ann Woodard, a black woman, won a plurality of the vote in one of the city council races, but lost to her white runner-up in the ensuing run-off election. She and other black citizens of Telfair County now challenge the validity of the 1973 majority-voting ordinance, claiming that it was never precleared by the Attorney General pursuant to Section 5 of the Voting Rights Act (Section 5).

## THE PRECLEARANCE ISSUE: THREE–JUDGE COURTS

Under Section 5, political subdivisions covered by the Voting Rights Act must submit changes in voting practices occurring after November 1, 1964, to the Attorney General or the District Court for the District of Columbia for preclearance. The defendants do not, and cannot, deny that Lumber City is covered by the Voting Rights Act, nor do they deny that the 1973 law was never submitted for preclearance. Their rather novel argument centers on Section 5's requirement that only *changes* in voting practices be precleared. Essentially, defendants argue that the 1952 electoral alterations implicitly gave Lumber City a majority-vote regime, one that was therefore in "force or effect" as of November 1, 1964. Since the 1973 law simply codified this existing arrangement, claim the defendants, it was not a *change* in voting practices, and hence need not have been precleared under Section 5.

■ Plaintiffs urge that a three-judge court be convened to decide whether defendants' claim has merit. Normally, the determination of whether a challenged voting regulation was subject to Section 5 is for a three-judge court to make. 28 U.S.C. § 2284. However, where the constitutional issue presented is patently frivolous or insubstantial, it is not necessary to undergo the delay and expense of convening such a court. *Baily v. Patterson*, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); *Broussard v. Perez*, 572 F.2d 1113 (5th Cir.1978). In *Broussard*, the defendants argued that a local school board ordinance need not have been precleared due to the existence of a state statute impliedly authorizing its salient provisions. In rejecting the contention of the defendants that the district judge acted improperly in ruling against defendants without convening a three-judge court, the appeals court held that that argument

was insubstantial under *Baily,* and hence could be disposed of by a single judge. 571 F.2d at 1119. The court quoted with approval the district court's formulation that a claim is insubstantial if it is "controlled by Supreme Court precedent *or cannot be seriously contested.*" 572 F.2d at 1119. (emphasis supplied).

The rule is a salutary one indeed. It indicates a policy against convening three-judge courts for purely perfunctory purposes. As the Supreme Court stated in *Allen v. State Board of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969),

> We have long held that congressional enactments providing for the convening of three-judge courts must be strictly construed ... convening a three-judge court places a burden on our federal court system, and may often result in a delay in a matter needing swift initial adjudication ... Also, a direct appeal may be taken from a three-judge court to this court, thus depriving us of the wise and often crucial adjudications of the courts of appeal.

393 U.S. at 561–62, 89 S.Ct. at 829–30. (quoted in *Miller v. Daniels,* 509 F.Supp. 400, 405 (S.D.N.Y.1981).

Thus, this court has a duty to examine defendants' claims to see if they can be "seriously contested."

### SUBSTANTIALITY OF DEFENDANTS' CLAIMS

■ Essentially, defendants allege that Lumber City had a "de facto" majority-voting system "in force or effect" as of November 1, 1964, which was not "changed" for purposes of Section 5 of the Voting Rights Act by the 1973 enactment. Frankly, I find the factual record submitted by defendants in support of their claim to be most troubling in its failure to persuasively document the existence of this "de facto" system. For example, the letters exchanged between Lumber City's attorney

and its clerk at the time of the 1952 alterations never mention majority-voting at all; the letters merely demonstrate the origins of the "posting system" adopted following the quandary of the preceding election. Nowhere is it even suggested that the statutory plurality-voting system was being discarded. More revealing are the records showing the results of Lumber City mayoral and city council elections held since 1950. These records are wholly inadequate as documentation of the workings of a majority-vote system. Since every election conducted between 1952 and 1973 was won by a candidate who secured both a plurality and a majority of the vote, these results are perfectly consistent with the idea that the 1909 enactment continued to be faithfully observed at all times.

All defendants can muster is support of their claims are a series of conclusory, self-serving allegations in their brief and its accompanying affidavits. One of these affidavits is most puzzling, in that the affiant merely states that a majority-voting system was in effect in 1982, a proposition that is not in issue.

■ I conclude that cognizable defenses to Section 5 actions should be made of sterner stuff than this. Bare allegations that are entirely unbolstered by the factual record are simply insufficient as a means of establishing a valid defense. *See Broadway v. City of Montgomery,* 530 F.2d 657, 660 (5th Cir.1976). To allow the defendants to proceed further in this action would be to allow any political subdivision to frustrate the operation of Section 5 by alleging that an enacted voting regulation simply codified an existing "de facto" practice, without having to undergo the burden of providing factual support for the existence of that practice. I am not prepared to so eviscerate Section 5. I find that the defendants' claim cannot be "seriously contested." [1]

---

1. This failure by the defendants to support their claim that a majority-voting system was "in effect" as of November 1, 1964, is also fatal to their argument that the 1973 law was valid due to a precleared Georgia law which allowed election by majority vote for public offices in the state. *See* Ga.Laws 1968, p. 885. The Supreme Court has ruled that the proper inquiry in such cases remains directed at what system was actually in "force or effect" in the political subdivision as of November 1, 1964. Thus, changes made pursuant to a valid state law are still

Accordingly, plaintiffs' request that a three-judge court be convened pursuant to 42 U.S.C. § 1973c and 28 U.S.C. § 2284 is DENIED, and plaintiffs' motion for summary judgment on the issue of preclearance is hereby GRANTED.

### INJUNCTIVE RELIEF

Plaintiffs have requested that the upcoming mayoral and city council elections be enjoined. It appearing that the plaintiffs have not shown undue or prejudicial delay in making this request, and it further appearing that an injunction will provide the defendants with a strong incentive to comply with the provisions of Section 5, IT IS HEREBY ORDERED that the City of Lumber City is enjoined from conducting mayoral and city council elections until it has secured preclearance of its current majority-voting system, encoded at Ga.Law 1973, p. 3540, either from the Attorney General of the United States or from the District Court for the District of Columbia as required by Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. This injunction shall cease to be in effect upon a determination by the Attorney General or the District Court of the District of Columbia that Ga.Laws 1973, p. 3540 complies with the Voting Rights Act. IT IS FURTHER ORDERED that the City of Lumber City shall submit its current electoral plan, Ga.Laws 1973, p. 3540, to the Attorney General of the United States or to the District Court for the District of Columbia for preclearance under Section 5 of the Voting Rights Act.

■ Plaintiffs also ask that the defendants be enjoined from refusing to allow plaintiff Mary Ann Woodard to take the seat on the city council she won by plurality vote in the 1985 election. I decline to take this step under these circumstances, where new elections will soon be held in Lumber City whether under a precleared majority-voting system or, if preclearance is denied, the old plurality-voting system. Ms. Woodard will have her fair opportunity to participate in those elections. Accordingly, the current mayor and members of the City Council of Lumber City shall continue in office until such time as their successors have been lawfully elected.

This Court shall retain jurisdiction over this case so that it may reschedule mayoral and city council elections at such time as the Attorney General or the District Court of the District of Columbia have determined whether Ga.Laws 1973, p. 3540 violates the terms of the Voting Rights Act of 1965.

---

"changes" for purposes of Section 5. *Hathorn v. Lovorn,* 457 U.S. 255, 102 S.Ct. 2421, 72 L.Ed.2d

824 (1982); *Perkins v. Matthews,* 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971).