Robert MOORE and Alice Yvette
McPherson, Plaintiffs,

v.

WESTERN SURETY COMPANY, a Corporation, and Leflore County Board of Supervisors, Leflore County, Mississippi, Alix H. Sanders, James H. Hooper, William J. Steward, W.R. Webb, Members of the Board; Howard Stanton and Barbara Haddon, Defendants.

Civ. A. No. GC 86–322–D–O.

United States District Court,
N.D. Mississippi,
Greenville Division.

Dec. 13, 1991.

Willie J. Perkins, Greenwood, Miss., for plaintiffs.

James W. Burgoon, Greenwood, Miss., for defendant Bd. of Sup'rs.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This matter is before the court on a motion of the Defendant Board of Supervisors for Rule 11 sanctions or, alternatively, attorney fees and costs pursuant to 28 U.S.C. § 1927. The motion for sanctions and costs is directed against Plaintiff Robert E. Moore and his attorney, Willie Perkins, Sr.,[1] for filing an "amended verified complaint" on June 22, 1987, a few months before the regularly scheduled elections of the Leflore County Board of Supervisors. The amended verified complaint changed the lawsuit from one against Western Surety Company ("Western Surety") to one against Western Surety and the entire Board of Supervisors and added a Section 5 claim under the Voting Rights Act. 42 U.S.C. § 1973c. Members of the Board of Supervisors allege that the amended complaint contained misstatements of fact and pointedly overlooked clear authority on the Voting Rights Act in this circuit.

After reviewing the record, the court finds the motion for Rule 11 sanctions to be well taken. However, mindful of the need to choose the least severe sanction necessary to reprimand and educate, the court limits its sanction to following requirement: In any future Voting Rights case filed in this court within two years from the date of this opinion in which Attorney Perkins serves as counsel for the complaining party, Perkins will be required to file along with his complaint a separate affidavit specifically reciting the Rule 11 requirements and stating that he has complied with these requirements.[2] The court declines to im-

1. The motion for sanctions was not directed against plaintiff Alice Yvette McPherson.

2. Of course, this sanction merely formalizes what Rule 11 already requires. As stated in the Rule,

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is

pose sanctions against Moore, however, because the unusual circumstances warranting sanctions against a client are not present here. As to the request for fees and costs pursuant to Section 1927, the court finds that the Defendant Board is not entitled to recover costs, expenses and attorney fees. Although Perkins failed to meet the standard of reasonableness required by Rule 11 in the filing of the amended complaint, the court is not convinced that he filed the complaint "vexatiously," which is a requirement for sanctions under Section 1927. Authority for the court's decisions is set forth below.

### Factual Background

The facts surrounding Moore's complaint were addressed in detail by this court in a memorandum opinion dated February 7, 1989 and need not be recounted fully here. In that opinion and accompanying order, the court granted defendants' motions to dismiss and for summary judgment. The decision was affirmed on appeal in a per curiam decision dated January 11, 1990. *Moore v. Western Surety*, 894 F.2d 405 (5th Cir.1990) (per curiam). Although the court's February 1989 opinion addressed the merits of plaintiffs' claims, the opinion did not address the Motion for Sanctions that had been filed by the Defendant Board of Supervisors.

As the briefs of the parties amply illustrate, the dispute between Moore and Leflore County was long-standing and resulted in parallel actions in this court before the undersigned judge and United States District Judge L.T. Senter. *See Moore, et al. v. Sanders*, No. GC 87-7-S-O. Moore, a black supervisor in District 2 of Leflore County, Mississippi, was elected to office in April of 1986. Pursuant to the requirements of Mississippi law, he entered into a contract with Defendant Western Surety for the posting of an official bond as a prerequisite for taking office. Western Surety asked to be relieved from its bond obligations in October of that same year after hearing of certain allegations having been leveled against Moore.[3] The application for the bond provided that Western Surety "may decline to become surety on any bond and may cancel or amend any bond without cause and without liability ...." Pursuant to Western Surety's request and to Miss.Code Ann. § 25-1-27,[4] the Board of Supervisors voted to allow Western Surety to be relieved from the bond and afforded Moore thirty days to provide new bond. Thereafter, on October 28, 1986, Moore brought this action against Western Surety claiming violations of the Voting Rights Act along with various claims of discrimination in the revoking of the bond. According to Moore's deposition testimony, his initial attempt to obtain a bond from another bonding company was

---

warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Fed.R.Civ.P. 11. By requiring Attorney Perkins to file a separate affidavit specifically stating that his pleading is well grounded in fact and supported by existing law or by a good-faith argument for a change in the law, the court hopes to impress upon Attorney Perkins the necessity for thoroughly investigating the merits of a claim before asserting it in a cursory fashion.

3. An investigator for Western Surety had determined that Moore used his official county vehicle for private purposes, that he had been subject to garnishment proceedings, that his wife had charged him with assault and that his driver's license had been suspended for traffic

violations. The court offers no opinion as to the validity of these charges. Additionally, at the time of Western Surety's request, a controversy had arisen between Moore and the other Board members as to whether he had authorized and directed the paving of a private road.

4. This section provides in pertinent part:
 In case a surety on any bond of any local officer or employee shall conceive himself to be in danger of suffering by being such surety and shall desire to be relieved therefrom, he may petition to board of supervisors or the municipal governing authority, as the case may be, for relief ... The appropriate governing authority shall thereupon order that the officer or employee give new bond with sufficient sureties in a penalty not less than the first bond and conditioned according to law, and notice of such order shall forthwith be given to such officer or employee ...
 Miss.Code Ann. § 25-1-27.

unsuccessful because the new bonding company wanted to know the reasons why Western Surety's bond had been revoked. However, he did manage to obtain a personal bond a couple of days later through support from citizens in Leflore County.[5] On or about November 6, 1986, within the thirty-day deadline, he filed a personal surety bond and thereby remained in office.

In December, however, a residency complaint was filed against him and in March of 1987, the Board of Supervisors declared Moore's office to be vacant on account of his failure to reside in his supervisor's district. One of the issues in the case before Judge Senter was whether the Board's determination of Moore's ineligibility for office violated the Voting Rights Act. Judge Senter, basing his decision in part on *Smith v. Winter*, 717 F.2d 191 (5th Cir. 1983), determined that the action of the Board did not create a Section 5 claim. At a hearing on June 8, 1987, Judge Senter warned Moore and his attorney of the danger of allowing politics to overshadow an attorney's duties to the court and of the possibility of sanctions.[6] Although defendants raise this discussion in the separate issue of sanctions before this court, Judge Senter ultimately concluded that sanctions under Rule 11 in the case before him were unwarranted. *Moore v. Western Surety*, No. GC 87–7–S–O (N.D.Miss. Oct. 11, 1991).

Meanwhile, plaintiffs, having obtained leave to amend before this judge, amended their complaint on June 22, 1987 to raise a new claim under Section 5 of the Voting Rights Act and to add the Board of Supervisors and its members as defendants.[7] Defendants note that plaintiffs' amended complaint before the undersigned was filed *after* the initial ruling in Moore's companion case before Judge Senter. The amended verified complaint alleged that Moore's effort to post a new bond "was totally unsuccessful because other surety and bonding companies wanted to know the reason why defendant was relieved from plaintiffs' bond."[8] Closely tracking language in the original complaint which had referred to Moore's unsuccessful attempt to post the required bond, the new complaint further stated that "if Plaintiff Moore is unable to post the required official bond by November 6, 1986, and to maintain a bond[,] then his office will be declared vacant and the plaintiffs will be deprived of their civil and voting rights due to the willful, deliberately [sic], malicious and conspiratorial acts of all of the defendants."[9] Although Moore stated in his deposition testimony that the reference to November 6th was an error and inappropriate to the amended complaint,[10] it is unclear why the amended verified complaint recounted Moore's unsuccessful attempt to post a bond when that issue had apparently been resolved shortly after the original complaint when Moore had been able to post a personal surety bond.[11] Nor is it clear why plaintiff was concerned in June

5. Deposition of Robert Moore, p. 4.

6. Judge Senter's remarks were particularly directed to Attorney Perkins, who was a candidate in the upcoming November elections in District 4. The record also shows that Moore was a candidate for District 2 supervisor.

7. The amended complaint also named McPherson, a voter, as an additional plaintiff.

8. Amended Verified Complaint, para. XVII.

9. Amended Verified Complaint, para. XIX.

10. Deposition of Robert Moore, pp. 21–23. Moore stated in his deposition that he and his attorney had not intended to include paragraph XIX in the amended verified complaint and that the November 6, 1986 date was obviously wrong. However, when asked whether the entire paragraph could be withdrawn, Perkins objected, stating that only the date was inappropriate.

11. In their brief in response to the Board's motion for sanctions, plaintiffs state that Moore was able to get a surety bond approved through the Chancery Court of Leflore County, although "Plaintiff Moore had to make at least two (2) other surety bonds due to the Board's encouragement of some of plaintiff's individual sureties to get off plaintiff's bond." Brief by Moore and his Counsel in Opposition to Defendant Board of Supervisor's Motion for Sanctions, p. 22. Perhaps Moore did have difficulties maintaining the personal surety bond, but this statement is different from that conveyed in the amended verified complaint, which suggests that Moore was never able to post a new bond.

1987 about the vacation of his office for failure to post the bond when the Board had already found a different reason to declare his seat vacant due to the alleged violation of the residency requirement. Defendants contend that Moore and his attorney misrepresented the facts surrounding the bond issue and filed the amended complaint solely for the purpose of multiplying the costs and proceedings in this litigation. They also contend that Moore and his attorney, by trying to hinge a Section 5 claim on the Board members' decision to withdraw the surety bond, did not conduct a reasonable investigation into the law.

In its initial opinion, this court considered six separate claims in plaintiffs' revised amended complaint, including plaintiffs' claim under Section 5 of the Voting Rights Act, and concluded that each was without merit.[12] Today, the court considers whether plaintiffs' claims were so lacking in factual basis and merit as to warrant sanctions under either Rule 11 or Section 1927.

### Discussion

#### 1. Sanctions Under Rule 11 [13]

 Rule 11 requires that every pleading, motion or paper signed by an attorney be well grounded in fact and supported by existing law or an argument for the extension, modification or reversal of existing law. Fed.R.Civ.P. 11. The signature also certifies that the signed paper has not been interposed for the purpose of delay, harassment, or increasing the costs to the other party. *Id.* In *Thomas v. Capital Secur.*

*Services, Inc.,* 836 F.2d 866 (5th Cir.1988) (en banc), the most recent leading case on Rule 11 sanctions in this circuit, the Fifth Circuit noted the obligations imposed by each separate part of the rule. Thus, the attorney must have 1) conducted a reasonable inquiry into the *facts* which support the document; 2) conducted a reasonable inquiry into the *law* supporting the document; and 3) certified to the best of his knowledge that the paper was not filed for an improper purpose such as delay, harassment or increasing the costs of litigation. *Id.* at 873–74. Although earlier panel opinions [14] had imposed a fourth requirement— a continuing obligation by the attorney to reevaluate the signed paper—*Thomas* held that the rule does not impose a continuing duty of reevaluation. *Thomas,* 836 F.2d at 874. Nevertheless, "Rule 11 applies to *each* and *every paper* signed during the course of the proceedings and requires that each filing reflect a reasonable inquiry." *Id.* at 875 (emphasis added). Each part of the rule imposes a separate, affirmative duty on the signer at the time of signing. *Id.*

 The rule also imposes certain obligations on the district court faced with a motion for sanctions. Under *Thomas,* the imposition of sanctions is mandatory once a Rule 11 violation has occurred. *Id.* at 876. On the other hand, district courts are afforded considerable discretion in fashioning an appropriate sanction. *Id.* at 877–88. Sanctions may range from "a warm friendly discussion on the record, a hard-nosed

---

**12.** The court's earlier opinion addressed and rejected each of the following claims: 1) denial of the right to contract under 42 U.S.C. § 1981; 2) violation of constitutional rights under color of state law under 42 U.S.C. § 1983; 3) conspiracy to interfere with civil rights under 42 U.S.C. § 1985; 4) violations of the Voting Rights Act; 5) unspecified violations of the fourteenth and fifteenth amendments; and 6) state law claims for breach of contract and bad faith.

**13.** In their response to the Defendant Board's Motion for Sanctions, plaintiffs contend that Rule 11 violates the Rules Enabling Act. This issue has been foreclosed by the Supreme Court's decision in *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. ——, 111 S.Ct. 922, 112 L.Ed.2d 1140

(1991). There, the Court noted that any Rules Enabling Act Challenge to Rule 11 faces significant hurdles because "Rule 11 is reasonably necessary to maintain the integrity of the system of federal practice and procedure and ... any effect on substantive rights is incidental." *Id.* 498 U.S. at —— ——, 111 S.Ct. at 934, 112 L.Ed.2d at 1159–60. Accordingly, the court finds that plaintiffs' Rules Enabling Act argument is without merit and proceeds to a discussion of whether sanctions are warranted in this case.

**14.** *See, e.g., Thomas v. Capital Securities,* 812 F.2d 984, 989 (5th Cir.1987); *Robinson v. Nat'l Cash Register Co.,* 808 F.2d 1119, 1127 (5th Cir. 1987).

reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances." *Id.* at 878. *Thomas* encouraged district courts to choose the sanction that best serves the Rule's dual purpose of educating an attorney and deterring future misconduct. "While monetary sanctions are appropriate under Rule 11," the district judge must choose the "least severe sanction adequate to the purpose." *Id.* at 877–78.[15] This concern may be even more valid in the complex, but important area of civil rights, where some commentators fear that Rule 11 sanctions are disproportionately felt. *See, e.g.,* C. Tobias, *Rule 11 and Civil Rights Litigation,* 37 Buffalo L.Rev. 485 (1989).

■ With these concerns and considerations in mind, the court proceeds to a discussion of the separate parts of the Rule to determine whether any part of it was violated. The court's discussion is confined to a discussion of the possible violations by Attorney Perkins. Even though it is possible to sanction a client represented by an attorney in some instances,[16] the circumstances do not call for a sanction against the client here. To be sanctioned individually, the client must have been "personally aware of or otherwise responsible for the bad faith procedural action." *Friesing v. Vandergrift,* 126 F.R.D. 527, 529 (S.D.Tex. 1989). Moore may have been aware of some of the factual problems in the amended complaint, but he would not have known of the importance of correcting the complaint between the time of its original filing and the second filing in June of 1987. Nor would he be expected to know whether the complaint was supported by the law. *See Thompson v. Aland,* 639 F.Supp. 724, 732 (N.D.Tex.1986). For these reasons, the court concludes that sanctions are inappropriate against Moore and proceeds to a discussion of the appropriateness of sanctions against his attorney.

### a. Whether Plaintiff's Attorney Conducted A Reasonable Inquiry Into the Facts

■ After reviewing the record in this case, the court is convinced that Perkins did not conduct a reasonable inquiry into the facts which supported the amended verified complaint. The problem centers in paragraphs XVII and XIX of the amended verified complaint which do not appear to have been revised in light of the new facts occurring between October of 1986 and June of 1987. Indeed, the language in these paragraphs is almost identical to that found in paragraphs XIII and XV in the original complaint and is supported by the same composite exhibit.[17] This exhibit contains three letters from insurance agencies all dated in October of 1986 explaining why each company declined to furnish a surety bond. While the exhibit does support the allegation by Moore and his attorney that Moore had difficulties obtaining a bond when he originally tried to do so, they only tell half of the story. No mention is made of the fact that Moore successfully solicited a personal bond and was able to retain office. It was misleading for Perkins to suggest that bond matters continued to be a threat to Moore's office when that matter had been resolved by the time the amended verified complaint was filed.

Plaintiffs' brief in response to the Motion for Sanctions does not discuss the above paragraphs or their problems. Instead, the brief focuses on why plaintiffs' claim was supported by existing law or by an argument for a change in the law, an issue the court will reach momentarily. However, as noted at the outset of this discussion, Rule 11 imposes not one, but three affirmative requirements, one of which is a reasonable inquiry into the facts. Perhaps Moore and

**15.** In *Thomas,* the Fifth Circuit "specifically adopt[ed] the principle that the sanction imposed should be the least severe sanction adequate to the purpose of Rule 11. Therefore, as a less severe alternative to monetary sanctions, district court may choose to admonish or reprimand attorneys who violate Rule 11." *Thomas,* 836 F.2d at 878.

**16.** Fed.R.Civ.P. 11, Advisory Committee's Notes.

**17.** Composite Exhibit D to Original Complaint and Amended Verified Complaint.

his attorney did not address the issue of the factual correctness of their complaint because they believed the mistakes would be viewed as merely typographical; Moore and Perkins suggested as much in response to questions directed toward Moore in his deposition testimony.[18] But even if plaintiff and his counsel intended to allege a continuing fear that the bond would be revoked, this does not excuse the total failure to mention the personal surety bond. The presence of the personal surety bond and Moore's ability to hold office once it had been obtained markedly affected Moore's allegations of a discriminatory-based conspiracy by Western Surety and the board members regarding the revocation of the original bond. Moore's ability to retain office also rendered his Voting Rights claim virtually non-existent as explained below. Under these circumstances, sanctions are warranted.[19]

### b. Whether Plaintiff's Attorney Conducted A Reasonable Inquiry Into the Law [20]

Defendants' claim that Perkins did not undertake a reasonable inquiry into the law focuses on only the Voting Rights aspect of plaintiffs' complaint against the Defendant Board. Accordingly, the court limits its discussion to whether that claim was supported by existing law or a good-faith argument for the extension, modification or reversal of existing law. Paragraph XXIII of the amended verified complaint alleged that:

> [D]efendant Board and its members have enforced Miss.Code Ann. § 25-1-27, amended by the Miss. Laws 1986 Legislative Session[,] without having the same submitted and precleared; that the afore-

said Section is the Section followed by the Board in granting defendant Western Surety Company's petition to be relieved from the surety bond of Plaintiff Moore and the Section is a change in voting practice and procedure in Leflore County, MS, which is covered by the Voting Rights Act.

Section 5 of the Voting Rights Act forbids covered jurisdictions from making changes in their voting qualifications or procedures without prior approval ("preclearance") of the Attorney General or the District Court for the District of Columbia. 42 U.S.C. § 1973c. Although a three-judge panel determines Section 5 claims, a single judge may dismiss a claim that is wholly insubstantial and completely without merit. *Broussard v. Perez,* 572 F.2d 1113, 1118 (5th Cir.1978), *cert. denied,* 439 U.S. 1002, 99 S.Ct. 610, 58 L.Ed.2d 677 (1978). Finding such a situation in the case before it, this court found plaintiffs' Section 5 claim to be completely without merit and granted defendants' motions to dismiss and for summary judgment. Like Judge Senter, the court relied on *Smith v. Winter* to find that the right to vote stops short of any absolute right to hold office. In the court's opinion, the withdrawal of a surety bond from an elected official did not create a claim under the Voting Rights Act under the law as it existed in the Fifth Circuit.

Having ruled against the plaintiffs on the merits, the court must now avoid the benefits of hindsight and determine whether Attorney Perkins had a viable argument for a change in the law when he signed the amended verified complaint. Sanctions are warranted in this case because Perkins

---

**18.** As noted in the facts of this opinion, Moore first suggested that paragraph XIX was erroneously included in the amended verified complaint, but Perkins later suggested that it was only the November 6, 1986 date that was in error.

**19.** The court finds only that the amended verified complaint filed in June of 1987 was not attended by a reasonable inquiry into the facts. The court offers no opinion about the validity of the original complaint filed in October of 1986, nor should it. That complaint is not at issue in this Motion for Sanctions. Moreover, the *Thomas* opinion made clear that counsel does

not have a continuing duty to reevaluate a paper once it is filed. However, *Thomas* also made clear that each and every filing must reflect a reasonable inquiry, *Thomas,* 836 F.2d at 875, so that the filing of the amended verified complaint renewed Attorney Perkins' Rule 11 obligations.

**20.** Because the court has already found that Perkins did not make a reasonable inquiry into the facts, the court need not further explore the need for sanctions, but chooses to do so in order to best determine what sanction is appropriate.

avoided both *Winter and* the language of Section 5 in the hopes of changing a local bonding matter into a full-fledged inquiry regarding the Voting Rights Act. Section 5 looks for a change that affects the right to vote. It is true that the section must be given a broad interpretation so as to encompass subtle as well as blatant forms of discrimination, *Allen v. State Board of Elections*, 393 U.S. 544, 565, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969). Accordingly, a few district courts have held that the reallocation of authority among elected officials is a change that requires Section 5 preclearance. *See, e.g., Hardy v. Wallace*, 603 F.Supp. 174 (N.D.Ala.1985); *Horry County v. United States*, 449 F.Supp. 990 (D.D.C. 1978).[21] The Fifth Circuit, perhaps seeing the need to set some parameters, declined to allow a local dispute over a recall procedure become grounds for Section 5 coverage in *Winter*, 717 F.2d at 194–96. Even pretending that *Winter* and its limitation on the reach of Section 5 coverage did not exist, more expansive readings from other jurisdictions would not create an argument for Section 5 coverage here. The revocation of the original surety bond did not result in Moore's removal from office because he was allowed to retain office until the separate problem of his residency gained the attention of fellow Board members;[22] consequently, no reallocation of authority occurred due to the bond matter under even the most expansive readings of the Voting Rights Act.[23] Moore's attorney did not simply fail to say that he was pressing for a change in the law; he failed

to seek a change that was remotely realistic. In sum, the court concludes that sanctions are warranted because Perkins did not undertake a reasonable inquiry into both the facts and the law.

### c. Whether the Amended Verified Complaint Was Filed for An Improper Purpose

Having already determined that sanctions are warranted, the court need not reach the question of whether plaintiffs filed the amended verified complaint for an improper purpose. However, for the purposes of determining an appropriate sanction and for reaching the issue of sanctions under Section 1927, discussed below, the court concludes that the proof of improper purpose is not so clear as to warrant sanctions on this basis alone. Defendants would have the court believe that plaintiffs filed the amended complaint solely to improve Moore's and Perkins' reelection chances and to increase costs to the Defendant County.[24] It is true that at the time the amended verified complaint was filed, the concern over the bond matter had been largely replaced by concerns over Moore's residency, which was the subject of an entirely different lawsuit. It is also true that Judge Senter's opinion foreshadowed the result that the court would ultimately reach here. But whether Perkins pursued the complaint for reasons of harassment or in an erroneous belief that the Voting Rights Act could protect his client is a guess the court will not hazard here. While the 1983 amendment to Rule 11 removed its subjective element so that a

---

**21.** Perkins did not present these cases to the district court in his brief in opposition to the Motion for Sanctions. Instead, the court became aware of the *Hardy* and *Horry* cases through its own research and through arguments that have been advanced by counsel in other Voting Rights cases before it.

**22.** At best, Moore had a subjective belief that the bond problems could affect his ability to hold office. *See* Deposition of Robert Moore, pp. 20–21.

**23.** The court does not seriously entertain plaintiffs' argument that Section 25–1–27 of the Mississippi Code was faulty for not having been precleared in light of the fact that the procedures for the withdrawal of a bond have not changed and apply to minority and non-minori-

ty bond holders alike. A comparison of the present provision, amended in 1986, and the former provision, which appears in Miss.Code Ann. (1972), shows that the procedures for withdrawal of a bond from a county district officer are identical to what they were before the amendment. The change merely substitutes terms such as "local officer or employee" from the previous terms of "county or county district officer." *See* Miss.Code Ann. § 25–1–27 (1972); Miss.Code Ann. § 25–1–27 (1991).

**24.** Moore stated in his deposition that he ran for office in the next elections in November, 1987, but was defeated. Deposition of Robert Moore, p. 6.

claim must now be objectively supported by the law and facts, *see* Fed.R.Civ.P. 11, Advisory Committee's Note, this court's hesitation in attributing improper purpose to Perkins is not an effort to re-instate a subjective element. By finding that sanctions are warranted, the court has already determined that the Voting Rights claim was not objectively reasonable. The court is simply not in a position to speculate whether Perkins was motivated by bad faith when he may have truly but erroneously believed that the Voting Rights Act could protect the hard-felt gains won in recent years by his black client.

### d. Appropriateness of a Non–Monetary Sanction In This Case

■ As expansive as the Voting Rights Act may be, it cannot work to eclipse the Rule 11 requirements. Having found that Moore's attorney did not undertake a reasonable inquiry into the law and the facts of the case, this court must impose a sanction. However, the court finds that monetary sanctions are not appropriate for several reasons. First, many of the claims contained within the amended verified complaint were not challenged in the Defendant Board's motion for sanctions. Therefore, it would be difficult, if not impossible, to separate the attorney's fees and costs devoted to the discrimination- and conspiracy-based claims from those devoted to the Section 5 Voting Rights claims. Second, the main factual problem in the amended verified complaint was one that was immediately discoverable by attorneys for the defendants. In his deposition, Moore was questioned by opposing attorneys who were well aware of the mistake in the complaint that listed November 6, 1986 as the bond deadline date when that date had already passed. The Board members themselves would have been cognizant of Moore's ability to retain office after the posting of the personal surety bond. Therefore, it is unlikely that Perkins' failure to update the facts in the complaint cost the Board's attorney significant time, research and attorney's fees. Finally, a non-monetary sanction best serves the twin goals of deterrence and education while imposing the least severe sanction neces-

sary to meet those goals as required by *Thomas,* 836 F.2d at 878. The court offers no comment as to the validity of studies and articles that suggest that civil rights' attorneys disproportionately feel the impact of Rule 11 sanctions. Nevertheless, the Voting Rights Act is a highly complex area of the law made more complex by the Supreme Court's recommendation that Section 5 of the Act be read expansively. It is in an effort to set some parameters that the court imposes a sanction here.

Accordingly, in any future Voting Rights case filed in this court within two years from this date in which Attorney Perkins serves as counsel for the complaining party, Perkins will be required to file along with his complaint a separate affidavit specifically reciting the Rule 11 requirements and stating that he has complied with these requirements. As noted previously in this opinion, this sanction merely formalizes the Rule 11 mandate. But by requiring Attorney Perkins to file a separate affidavit specifically stating that his pleading is well grounded in fact and supported by existing law or by a good-faith argument for a change in the law, the court hopes to impress upon Attorney Perkins the necessity for thoroughly investigating the merits of a claim before asserting it in a cursory fashion. Zealous as Perkins may have wanted to be in defending the political gains of blacks in Leflore County, this did not excuse his duty to forward an argument grounded in law or in a reasonable argument for its extension, modification or reversal.

### 2. Sanctions Under Section 1927

■ Section 1927 of Title 28 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Unlike Rule 11, Section 1927 imposes a continuing obligation on

attorneys to reevaluate the merits of their claims. *Thomas,* 836 F.2d at 875. The statute also differs from Rule 11 by requiring bad faith or vexatiousness in the filing of an unsupported claim. Thus, an award of attorney's fees under Section 1927 "must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." *Sherman Treaters Ltd. v. Ahlbrandt,* 115 F.R.D. 519, 524–25 (D.D.C.1987) (citation omitted). In the *Sherman Treaters* case, the court found that plaintiff's counsel had acted unreasonably, but not necessarily in bad faith, so that Rule 11 sanctions were appropriate, but sanctions under Section 1927 were not. *Id.* at 525. In this circuit, sanctions under Section 1927 are imposed when "the claim advanced is unreasonable or is not brought with a reasonable good faith belief that it is justified." *Sturgeon v. Airborne Freight Corp.,* 778 F.2d 1154, 1161 (5th Cir.1985) (citing *Stelly v. Commissioner,* 761 F.2d 1113, 1116 (5th Cir. 1985)). Although *Sturgeon* suggests that unreasonableness *or* bad faith may be a grounds for sanctions, the court, in the exercise of its discretion, refuses to impose costs, expenses and attorney's fees here under Section 1927 on the chance that Attorney Perkins truly believed the claim was viable.

### Conclusion

In summary, the court finds that Attorney Perkins did not undertake a reasonable inquiry into the law and the facts as required by Rule 11 and will impose the nonmonetary sanction outlined in this opinion. The court declines to impose sanctions against Moore because the unusual circumstances warranting sanctions against a client are not present here. As to the request for fees and costs pursuant to Section 1927, the court finds that the Defendant Board is not entitled to recover costs, expenses and attorney fees because the court is not convinced that Perkins filed the complaint in bad faith.